UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMIE HARMON,<br><br>Defendant. | Case No.: 08-CR-00938-LHK<br><br>ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL<br><br>[PUBLIC REDACTED VERSION] |

Before the Court is a motion for a new trial based on prosecutorial misconduct brought by Defendant Jamie Harmon ("Harmon"). ECF No. 350. The government opposes the motion. Having considered the submissions of the parties, the record, and the relevant law, the Court hereby DENIES Harmon's motion for a new trial.

I.      **PROCEDURAL HISTORY**

On December 31, 2008, a grand jury indicted Harmon for money laundering and conspiracy to commit money laundering. ECF No. 1. The Indictment alleged that Harmon, an attorney, deposited funds belonging to her client that Harmon knew had been derived from unlawful activity into Harmon's attorney-client trust account, and then illegally issued a series of checks to her client and her client's wife in various increments from that attorney-client trust account. *Id.* On July 1, 2010, before trial, Harmon moved to dismiss the Indictment based on

allegations of prosecutorial misconduct in the form of knowingly presenting perjured testimony to the grand jury through a witness named Yan Ebyam. ECF No. 109. Judge James Ware denied the motion. ECF No. 110 at 1. Subsequently, on July 20, 2010, a jury found Harmon guilty of five counts of knowingly laundering money for one of her legal clients in violation of 18 U.S.C. § 1956(a)(1)(B)(i), but hung on one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). ECF No. 146, 149.

After her conviction, Harmon renewed her request to dismiss the Indictment based on prosecutorial misconduct during the grand jury proceedings by filing a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, and in the alternative, a new trial under Federal Rule of Criminal Procedure 33. ECF No. 175. The government opposed. ECF No. 183. On August 18, 2011, Judge Ware denied Harmon's Rule 29 motion for acquittal and rejected her argument, reasoning that there was no established law holding that an indictment based upon knowingly perjured testimony violates due process. ECF No. 227 at 11. Judge Ware, however, granted Harmon's motion for a new trial under Rule 33 based on an erroneous jury instruction that Judge Ware identified sua sponte. ECF No. 227 at 17. Judge Ware did not reach whether Harmon's allegation of prosecutorial misconduct during the grand jury proceedings warranted a new trial under Federal Rule of Criminal Procedure 33. The government subsequently appealed Judge Ware's order granting a new trial. ECF No. 236.

After Judge Ware's retirement, this case was reassigned to the undersigned judge on September 5, 2012. ECF No. 278. On August 13, 2013, the Ninth Circuit issued a memorandum disposition reversing Judge Ware's grant of a new trial because "the instructional error would not have warranted a new trial because it was harmless" in light of the overwhelming evidence of Harmon's guilt. ECF No. 308 at 3. The Ninth Circuit did not reach the issue of whether a new trial was warranted in light of any prosecutorial misconduct during the grand jury proceedings. *See id.*

After full briefing and an evidentiary hearing on January 24, 2014, this Court on February 28, 2014 denied Harmon's request for a new trial based on allegations of petit juror misconduct. ECF No. 344. On April 9, 2014, Harmon requested that this Court dismiss the Indictment and order a new trial under Federal Rule of Criminal Procedure 33 due to prosecutorial misconduct during

2
Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

the grand jury proceedings. ECF No. 350 ("Mot."). On April 23, 2014 the government lodged an opposition under seal with this Court ("Opp'n"). On April 30, 2014, Harmon filed a reply. ECF No. 360 ("Reply").

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 33 allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Proc. 33(a). The burden of justifying a new trial rests with the defendant. *See United States v. Shaffer*, 789 F.2d 682, 687 (9th Cir. 1986). The decision to grant a new trial is within the sound discretion of the trial court. *See United States v. Love*, 535 F.2d 1152, 1157 (9th Cir. 1976), *cert. denied*, 429 U.S. 847 (1976).

Dismissal of an indictment is "considered a 'drastic step' and is generally disfavored as a remedy." *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000) (quoting *Guam v. Muna*, 999 F.2d 397, 399 (9th Cir. 1993)); *see also United States v. Samang*, 607 F.2d 877, 881 (9th Cir. 1979) ("The Court's power to dismiss an indictment on the ground of prosecutorial misconduct is frequently discussed but rarely invoked."). An indictment may be dismissed pursuant to the court's supervisory powers "only in flagrant cases of prosecutorial misconduct." *United States v. De Rosa*, 783 F.2d 1401, 1406 (9th Cir. 1986). Furthermore, dismissal is an especially disfavored remedy after the conclusion of trial. *Muna*, 999 F.2d at 399; *United States v. Venegas,* 800 F.2d 868, 869 (9th Cir. 1986) (holding that a defendant who challenges an indictment based on prosecutorial misconduct "bears a heavy burden").

The Supreme Court has held that "a conviction obtained through use of false evidence, known to be such by representatives of the State" violates the defendant's right to due process. *See Napue v. Illinois,* 360 U.S. 264, 269 (1959). In order to prevail on such a due process claim, the defendant "must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *See United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003), *cert. denied,* 540 U.S. 1208 (2004). *Napue* has been extended to grand jury proceedings; in other words, a due process violation ensues when a prosecutor knowingly presents perjured testimony, material in nature, to the grand jury. *United States v. Basurto*, 497 F.2d 781, 785-86 (9th Cir. 1974).

3

1    The standard for determining whether error in grand jury proceedings justifies dismissal of
2    an indictment differs when it is considered prior to or after the conclusion of a trial. When the trial
3    judge considers the issue *prior* to the conclusion of the trial, the inquiry is whether the defendant
4    has been prejudiced by the error. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988).
5    Prejudice is demonstrated from prosecutorial misconduct " 'if it is established that the violation
6    substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the
7    decision to indict was free from substantial influence of such violations." *Id.* at 256 (citation
8    omitted). If, however, a petit jury subsequently convicts a defendant of the charges upon which he
9    was indicted, "any error in the grand jury proceeding connected with the charging decision [is
10   deemed] harmless beyond a reasonable doubt." *United States v. Mechanik*, 475 U.S. 66, 70 (1986).
11   Indeed, "a petit jury's verdict of guilty beyond a reasonable doubt establishes *a fortiori* that there
12   was probable cause to charge, so grand jury error is rendered harmless by conviction." *United*
13   *States v. Navarro*, 608 F.3d 529, 540 (9th Cir. 2010). The United States Supreme Court has held
14   that even if a defendant demonstrates error during grand jury proceedings, such error does not
15   warrant reversal of a conviction. *Mechanik,* 475 U.S. at 73. Rather, such errors are rendered
16   harmless once a petit jury has reached a guilty verdict. *Id.* at 70-71. A grand jury is convened in
17   order to determine whether probable cause exists to force a criminal defendant to suffer the
18   hardship of a criminal trial. Because a trial jury is tasked with determining actual guilt, once a trial
19   jury has found guilt beyond a reasonable doubt, it is presumed that any error during the grand jury
20   proceedings was harmless beyond a reasonable doubt. *Id.* The Ninth Circuit Court of Appeals has
21   reiterated that errors in grand jury proceeding are typically harmless once a guilty verdict is
22   rendered. *Navarro*, 608 F.3d at 538-39.
23   After conviction, dismissal of the indictment will be appropriate only where "the structural
24   protections of the grand jury have been so compromised as to render the proceedings
25   fundamentally unfair." *Muna*, 999 F.2d at 399 (citing *Bank of Nova Scotia*, 487 U.S. at 257). The
26   only structural errors the Supreme Court has recognized in the grand jury context are racial and
27   gender discrimination in the selection of the grand jurors. *See Bank of Nova Scotia*, 487 U.S. at
28   257.

### III.   GRAND JURY PROCEEDINGS

Before analyzing Harmon's motion, the Court sets forth the relevant facts from Harmon's grand jury proceedings in order to provide necessary background.

### A.   Yan Ebyam's Plea Agreement and Testimony Before the Grand Jury

███████████████████████ ██[1]

Yan Ebyam is one of the witnesses who testified on behalf of the government during Harmon's grand jury proceedings. ███████████████████████████████, on September 27, 2004, Ebyam pleaded guilty in federal court to one count of conspiracy to commit money laundering in violation of § 18 U.S.C. 1956(h) pursuant to a plea agreement. ECF No. 350-2 (Plea Agreement). In his plea agreement, Ebyam admitted that between September 1, 2003 and December 31, 2003, he participated in a conspiracy to launder money. *Id.* at ¶ 1. In return for Ebyam's plea, the government promised Ebyam "to move to dismiss any open charges," *id.* at ¶ 15, "not to file or seek any additional charges that could be filed as a result of the investigation that led to the pending indictment," *id.* at ¶ 16, "not to use any statements made by the defendant [] against him," *id.* at ¶ 17, and to recommend a downward departure from the Sentencing Guidelines based on Ebyam's cooperation, *id.* at ¶ 19. In return, Ebyam promised to "cooperate with the U.S. Attorney's Office before and after I am sentenced," including as follows: "I will respond truthfully and completely to any and all questions put to me, whether in interviews, before a grand jury or at any trial or other proceeding; . . . I will testify truthfully at any grand jury, court or other proceeding as requested by the government." *Id.* at ¶ 9. If Ebyam breached the agreement, the government would be "released from all of its promises," and "any statements [he] made to any law enforcement or other government agency or in Court, whether or not made pursuant to the cooperation provisions of this Agreement, may be used in any way," and any statute of limitations defense would be waived, though Ebyam himself would "not be released from [his] guilty plea." *Id.* at ¶¶ 11-12. On August 22, 2005, Judge Ware sentenced Ebyam to twelve months and one day of imprisonment and three years of supervised release. *See* Opp'n, Exhibit E.

---

[1] The Court seals in this Order any testimony presented to the grand jury, with the exception of any information publicly disclosed during trial regarding the testimony that was presented to the grand jury.

United States District Court
For the Northern District of California

1   Ebyam testified three times in Harmon's grand jury proceedings, ████████████
2   ████████████████████████. *See generally* Opp'n, Exhibits F, G, and J. Before testifying in the
3   grand jury proceedings in Harmon's case for the first time ████████, Ebyam had already
4   served his prison sentence in full and thus no sentence reduction was possible. *See* Opp'n, Exhibit J
5   at 80; Exhibit F at 35. Also, before Ebyam testified in the grand jury proceedings for the first time,
6   the one year time period for the government to file a motion under Federal Rule of Criminal
7   Procedure 35(b) to reduce Ebyam's sentence due to his assistance to the government had already
8   passed.[2]

[redacted lines 9–17]

18   At Harmon's trial, Ebyam testified on behalf of the government. *See* ECF No. 380. When
19   cross-examined by Harmon's counsel regarding Ebyam's plea agreement's inclusion of
20   cooperation provisions including whether Ebyam was required to testify before a grand jury,
21   Ebyam testified at trial that he did not think, when he testified before the grand jury, that he was
22   under any obligation to cooperate with the government because he thought the plea agreement did
23   not extend to a time after he was sentenced. *See* ECF No. 380 at 1265, 1270, 1274.

24   **B.    Testimony Before the Grand Jury Concerning Harmon's Guilt**

---

[2] Rule 35(b), titled, "Reducing a Sentence for Substantial Assistance," states that "upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person."

6

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

### 1. Yan Ebyam's Testimony

At the grand jury proceeding ████████, Ebyam testified that he and his business partner Christian Pantages formed Silicon Valley Resale ("SVR"), a business which bought and sold stolen computer equipment. *See* Opp'n, Exhibit F at 4-28. ████████

████████ Pantages was arrested ████████ Ebyam then asked Harmon if she would represent him as his attorney, but she declined given that she was already representing Pantages. *Id.* at 50-51. ████████

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

1 █
2 █
3 █
4 █
5 █
6 █
7 █
8 █
9 █
10 █
11 █
12 █
13 █
14 █
15 █
16 █
17 █
18 █
19 █
20 █ and told
21 MacPherson to inform Harmon that the money deposited in her attorney-client trust account
22 stemmed from the sale of stolen equipment. *Id.* at 45-49. █
23 █
24 █
25 █
26 █
27 █
28 **2.** █

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

1  ████████████████████████████████████████
2  ████████████████████████████████████████
3  ██████████████████████████████████
4  ███████████████████████████████████████
5  ████████████████████████████████████████
6  ████████████████████████████████████████
7  ████████████████████████████████████████
8  ████████████████████████████████████████
9  ████████████████████████████████████████
10 ████████████████████████████████████████
11 ██████████████████████████████████████
12 ████████████████████████████████████████
13 ████████████████████████████████████████
14 ██████████████████████████████████████
15 ███████████████████████████████████
16 ████████████████████████████████████████
17 ████████████████████████████████████████
18 ████████████████████████████████████████
19 ████████████████████████████████████████
20 ████████████████████████

21     **3.     David MacPherson's Testimony**

22 ████████████████████████████████████████
23 ████████████████████████████████████████
24 ████████████████████████████████████████
25 ████████████████████████████████
26 ██████████████████████████████████
27 ████████████████████████████████████████
28 ████████████████████████████████████████

United States District Court
For the Northern District of California



## IV. ANALYSIS

Harmon asks this Court to dismiss her Indictment and grant a new trial, arguing that the prosecutor committed misconduct during grand jury proceedings by knowingly presenting the false testimony by Ebyam that Ebyam was under no agreement with the government requiring him to testify in the grand jury proceeding. Mot. at 1. Harmon argues the prosecutor did so in order to increase Ebyam's credibility in the eyes of the grand jury. The government responds that no perjured testimony was presented, but that even assuming it was, any error was harmless because Harmon was subsequently convicted by a petit jury, and alternatively because the grand jury would still have found probable cause to support the Indictment notwithstanding Ebyam's allegedly perjured testimony. Opp'n at 2, 21-22. The Court DENIES Harmon's request for a new trial, as explained below.

It is clear that under Ninth Circuit law, it would have been a violation of due process if Harmon's prosecutor did knowingly present perjured testimony, material in nature, to the grand jury. *See Basurto*, 497 F.2d at 785-86; *see also United States v. Thompson*, 576 F.2d 784, 786 (9th

Cir. 1978).[3] However, this Court need not determine whether the prosecutor in Harmon's case did in fact knowingly present perjured testimony to the grand jury when Ebyam testified that he was under no agreement with the government requiring him to testify in the grand jury proceeding.[4] This is because Harmon asks this Court to dismiss her indictment *after* she has already been convicted by a petit jury, and the Supreme Court has unequivocally held that after a conviction, "any error in the grand jury proceeding connected with the charging decision [is deemed] harmless beyond a reasonable doubt" as a matter of law.[5] *Mechanik*, 475 U.S. at 70; *see also Navarro*, 608 F.3d at 540 (acknowledging that a conviction beyond a reasonable doubt by a petit jury moots as harmless any defect in a grand jury's probable cause finding). The Ninth Circuit has explained this is because "a petit jury's verdict of guilty beyond a reasonable doubt establishes *a fortiori* that there was probable cause to charge, so grand jury error is rendered harmless by conviction." *Navarro*, 608 F.3d at 540. The Ninth Circuit has thus routinely applied *Mechanik*'s bright line post-conviction rule and summarily concluded that any errors during grand jury proceedings were harmless as a matter of law, and thus affirmed district courts' denials of post-trial motions to dismiss indictments. *See, e.g., Muna*, 999 F.2d at 399 ("[A]fter conviction, the *Mechanik* standard applies and, therefore, even if the prosecutor erred . . . , the error is harmless beyond a reasonable doubt and does not justify dismissal of the indictment."); *United States v. Caruto*, 663 F.3d 394, 402 (9th Cir. 2010) ("At this point, the existence of probable cause is not in doubt, because Caruto was subsequently found guilty by the petit jury based on proof beyond a reasonable doubt. The alleged error was . . . rendered harmless by Caruto's subsequent conviction.") (citing *Mechanik*,

---

[3] Thus, Judge Ware's holding, after Harmon's trial, that the Supreme Court's holding in *Napue* has not been extended to bar the knowing presentation of false testimony during grand jury proceedings was incorrect as a matter of law. See ECF No. 227 at 11.
[4] While the Court does not reach whether the prosecutor knowingly presented perjured testimony, the Court notes that ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ the prosecutor should have immediately informed the grand jury of the existence of the cooperation agreement.
[5] The Supreme Court reasoned that this is so because "the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings." *Mechanik*, 475 U.S. at 73.

11

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

475 U.S. at 70).[6] District courts have followed suit. *See, e.g.*, *Atwood v. Schriro*, 489 F.Supp.2d 982, 1034 (D. Ariz. May 1, 2007) (rejecting habeas petitioner's argument that conviction must be reversed because prosecutor presented false testimony, on the basis that the petit jury convicted petitioner and thus any error in the grand jury proceeding was harmless); *Hooper v. Schriro*, 2008 WL 4542782, *11 (D. Ariz. Oct. 10, 2008) (rejecting habeas petitioner's claim and holding that any alleged constitutional error from prosecutor's presentation of false testimony to the grand jury was harmless under *Mechanik*).[7] Accordingly, here, the Court concludes that under *Mechanik*, even assuming prosecutorial misconduct occurred in this case, it was harmless error as a matter of law given Harmon's subsequent conviction by a petit jury.

The only exception to *Mechanik*'s harmless error rule after a defendant has been convicted is that dismissal of an indictment is appropriate where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *Muna*, 999 F.2d at 399 (citation omitted). The only error in the context of grand jury proceedings that the Supreme Court has deemed to be structural, and thus subject to automatic reversal, is discrimination on account of race or sex in the selection of grand jurors. *Bank of Nova Scotia*, 487 U.S. at 257.[8] There is no allegation of such discrimination in the instant case. Thus, there is no structural error in this case.

---

[6] For other examples, see *United States v. Gladhart*, 68 Fed. Appx. 784, 785-86 (9th Cir. 2003); *United States v. Filbin*, 243 F.3d 550, *1 (9th Cir. 2000); *United States v. Ochoa-Ramirez*, 386 Fed. Appx. 641, 642 (9th Cir. 2010); *United States v. Trujillo*, 73 F.3d 371, *1 (9th Cir. 1995).
[7] For other examples, see *United States v. Lewis*, 2010 WL 3447702, *4 (N.D. Cal. Aug. 30, 2010); *Murray v. Schriro*, 2006 WL 988133, *7 (D. Ariz. Apr. 13, 2006); *Todd v. United States*, 2012 WL 2952084, *7 (W.D. Wash. June 26, 2012).
[8] "[M]ost constitutional errors can be harmless; only in rare cases is an error deemed 'structural error' that requires automatic reversal." *Washington v. Recuenco*, 126 S.Ct. 2546, 52 (2006). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." *Neder v. United States*, 527 U.S. 1, 8 (1999). The Supreme Court's cases enumerate a class of "structural errors" at trial that are not susceptible to harmless error analysis. *See Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005) ("The list of structural errors that the Supreme Court has recognized is short and limited. These structural errors include: 'total deprivation of the right to counsel at trial,' 'a judge who was not impartial,' 'unlawful exclusion of members of the defendant's race from a grand jury,' 'the right to self-representation at trial,' and 'the right to[a] public trial,' [and] '[d]enial of the right to a jury verdict of guilt beyond a reasonable doubt.'").

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

1 Further, Harmon has not pointed to any legal authority that establishes that a prosecutor's
2 knowing presentation of false evidence to the grand jury constitutes structural error. To the
3 contrary, the Ninth Circuit has actually held that "[p]resentation of perjured testimony to the grand
4 jury is not [] a structural flaw." *United States v. Sitton*, 968 F.2d 947, 954 (9th Cir. 1992),
5 *abrogated on other grounds by Koon v. United States,* 518 U.S. 81, 96-100 (1996); *see also*
6 *Williams v. Stewart,* 441 F.3d 1030, 1041-42 (9th Cir.), *cert. denied,* 549 U.S. 1002 (2006)
7 (holding that any constitutional error from prosecutor's misconduct during grand jury proceeding
8 by submitting false testimony was harmless under *Mechanik* because defendant was ultimately
9 convicted, without discussing whether error was possibly structural error). District courts are in
10 accord. *See, e.g.*, *United States v. Aguilar*, 831 F.Supp.2d 1180, 1201 (C.D. Cal. Dec. 1, 2011)
11 (holding "there is no basis to find structural error" in case where prosecutor had allegedly "allowed
12 a key FBI agent to testify untruthfully before the grand jury"); *Hooper*, 2008 WL 4542782, *11
13 (noting that any constitutional error from prosecutor's submission of false testimony to the grand
14 jury was harmless under *Mechanik* because defendant was ultimately convicted on charged
15 offenses without discussing whether error was possibly structural); *United States v. Pablo*, 2008
16 WL 4183381, *6 n.8 (D. Ariz. Sept. 11, 2008) (same). [9] Because Harmon has not raised a structural
17 error, *Mechanik*'s bright line harmless error rule applies, and this Court concludes that any error in
18 Harmon's grand jury proceeding was harmless. *See, e.g.*, *United States v. Figueroa-Montes*, 400
19 Fed. Appx. 148 (9th Cir. 2010) (holding that "[b]ecause [any error] was not structural error, it was
20 rendered harmless by Figueroa's subsequent conviction by a jury.").

21 The Court notes that on the basis of the evidence at trial, the petit jury found Harmon guilty
22 of money laundering beyond a reasonable doubt. The evidence at trial showed that Pantages and
23 Ebyam founded SVR. ECF No. 379 at 1008-9; ECF No. 380 at 1326. Ebyam testified that after
24 Pantages was arrested, Pantages' wife contacted Harmon to represent Pantages and put Harmon in

---

[9] Even presentation of perjured testimony *at trial* is not a structural error requiring automatic reversal. *See Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (holding that knowing presentation of false testimony to the petit jury is not structural error that requires reversal); *see also Shih Wei Su v. Filion*, 335 F.3d 119, 126-127 (2d Cir. 2003) (where "prosecutor elicits testimony [at trial] he or she knows or should know to be false, or allows such testimony to go uncorrected, a showing of prejudice is required" and the error is not structural error).

contact with Ebyam, who told Harmon that he and Pantages were buying and selling stolen computer equipment. ECF No. 380 at 1303-07, 1326-35. Pantages also testified that he told Harmon that SVR bought and sold stolen computer equipment when he first met with her in her capacity as his criminal defense attorney. ECF No. 379 at 924-33, 955-60. Pantages testified that after he picked up two final SVR checks totaling $127,550 from Federal Express on December 23, 2003, he and his wife met with Harmon and told her that Pantages had no money to pay Harmon's initial $7,500 retainer fee, but that Pantages had two checks payable to SVR that he could not cash because SVR's bank account was frozen. *Id.* at 953-77. Pantages testified that Harmon offered to take the two checks and deposit them into her client-trust account after Pantages endorsed them over to her. *Id.* Harmon agreed to return most of that money to Pantages and his wife, minus Harmon's retainer fees. *Id.* at 966. At the end of the meeting, Pantages signed the checks over to Harmon who deposited the checks into her attorney-client trust account. *Id.* at 977-87. After the funds from the two checks cleared into Harmon's client trust account, Harmon returned $102,050 to Pantages and his wife through a series of five checks between December 31, 2003 and January 28, 2004, and then on February 4, 2004 gave them a final check of $54,000, for a total of $156,050.[10] *Id.* at 986-100. Ginger Wright, Harmon's office manager, testified that Harmon had never had a client deposit such a large amount of money before and had never returned over $100,000 back to a client within six weeks. ECF No. 378 at 774-80.

Although *Mechanik* and the majority of Ninth Circuit cases clearly hold that after a conviction, only structural error can result in the reversal of a conviction because all other errors are deemed harmless as a matter of law, *see Muna*, 999 F.2d, at least one published Ninth Circuit decision does not apply *Mechanik*'s harmless error rule post-conviction but instead evaluates whether a conviction should be reversed based on whether a non-structural error "substantially influenced the grand jury's decision to indict." *United States v. Brown*, 347 F.3d 1095, 1098 (9th Cir. 2003) (refusing to reverse conviction for prosecutorial misconduct where government

---

[10] This Court was assigned this case more than two years after the trial, so this Court is not aware of any explanation for the discrepancy between the testimony at trial that Harmon returned some $156,000 from the attorney-client trust account to the Pantages, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

conceded officer testified falsely to the grand jury, because "[i]f that portion of the testimony is excised, [the officer's] remaining truthful testimony provided probable cause to support the indictment" and thus the false testimony did not substantially influence the grand jury's decision to indict); *see also United States v. Hernandez*, 312 Fed. Appx. 937, 938 (9th Cir. 2009) (unpublished) (holding that notwithstanding any alleged perjured testimony before the grand jury, there was "sufficient non-perjurious testimony ... to support the indictment," and therefore dismissal of the indictment was not justified).

In an abundance of caution, this Court applies *Brown*'s analysis here and concludes that even under that test, a new trial is not warranted. In other words, the Court concludes that notwithstanding any of Ebyam's testimony, including his allegedly perjured testimony, the grand jury still had sufficient evidence to find probable cause that Harmon engaged in money laundering, and thus Ebyam's allegedly perjured testimony did not substantially influence the grand jury's decision to indict. Indeed, this case is analogous to *United States v. Boyd*, 63 Fed. Appx. 312 (9th Cir. 2003) (unpublished). There, the Ninth Circuit affirmed the district court's denial of the defendant's motion to dismiss his indictment after conviction, reasoning that even assuming the prosecutor engaged in misconduct before the grand jury by asking leading questions that led a witness to testify that he was not testifying pursuant to a cooperation agreement, any alleged misconduct did not substantially influence the grand jury's decision to indict because sufficient non-perjured testimony existed to support the indictment. *Id.* at 314.

Here, the elements for money laundering under § 1956(a)(1) are met if a person: (1) engaged in a financial transaction which involved proceeds from specified illegal activity; (2) knew the proceeds were from illegal activity; and (3) intended the transaction either to promote the illegal activity or to conceal the nature, source, or ownership of the illegal proceeds. *United States v. Marbella*, 73 F.3d 1508, 1514 (9th Cir. 1996). The only element Harmon challenges is whether the grand jury had probable cause to believe that Harmon had knowledge that the two checks made payable to SVR which were deposited in Harmon's attorney-client trust account were the proceeds of illegal activities. Mot. at 3, 13 ("Without evidence of such knowledge, the grand jury could not indict."). Harmon argues that ▮

15



1 

2 

3                                                                            Reply at 2. Harmon's argument

4  fails because "both direct and circumstantial evidence can be used to establish knowledge[.]"

5  *United States v. Sayakhom*, 186 F.3d 928, 943 n.8 (9th Cir. 1999) (citation omitted); *see also*

6  *United States v. Santos*, 553 U.S. 507, 521 (2008) (noting how circumstantial evidence can prove

7  the knowledge element of money laundering). Here, even disregarding all of Ebyam's testimony,

8  including his testimony that he told Harmon that the checks were the proceeds of illegal activities,

9  the Court finds that                         and David Macpherson's testimony as set forth below

10 were sufficient to support a finding of probable cause that Harmon knew the SVR checks deposited

11 in her attorney-client trust account were the proceeds of illegal activities.

The following four inferences from the facts above suggest there was probable cause to find that Harmon knew the SVR checks deposited in her attorney-client trust account were the proceeds of illegal activities.



1 ▌
2 ▌
3 ▌
4 ▌
5 ▌

While these various inferences from the circumstantial evidence might not prove *beyond a reasonable doubt* that Harmon knew that the checks deposited in her attorney-client trust account were the proceeds of illegal activity, this Court finds that they at least provide *probable cause* that Harmon knew this was the case. This is because "probable cause" is a lower evidentiary standard. *See United States v. Williams*, 2012 WL 360277, *6 (D. Or. Feb. 1, 2012) (noting that "probable cause" is "far lower standard than that of 'beyond a reasonable doubt'"); *see also Gerstein v. Pugh*, 420 U.S. 103, 121 (1975).

Accordingly, the Court concludes that even disregarding all of Ebyam's testimony, the grand jury could have found probable cause that Harmon knew, when she accepted and deposited two checks written out to SVR, that those checks were the proceeds of illegal activity. Thus, even applying the Ninth Circuit's analysis in *Brown*, the Court concludes that Ebyam's allegedly perjured testimony did not substantially influence the grand jury's decision to indict, and Harmon's conviction cannot be reversed.

V. **CONCLUSION**

For the foregoing reasons, the Court DENIES Harmon's motion for a new trial.

**IT IS SO ORDERED.**
Dated: May 30, 2014

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

---

[11] ▌

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL